HOOKS *v.* CINCINNATI METROPOLITAN HOUSING AUTHORITY
ET AL.

(No. A-241321—Decided December 6, 1969.)

Court of Common Pleas of Hamilton County.

*Mr. Sydney J. Silvian,* for plaintiffs.
*Mr. Booth Shepard,* for defendants.

KEEFE, J.   This is an injunction suit.   The plaintiffs are tenants in one of the projects of The Cincinnati Metropolitan Housing Authority.   Defendants are The Cincinnati Metropolitan Housing Authority, which operates fifteen projects in Hamilton County, and Carl J. Mayerhoefer, who is the executive head of the authority.   All projects are in the city of Cincinnati with the exception of one in Lincoln Heights.   The Cincinnati Metropolitan Housing Authority is an Ohio corporation.

Operation of the Metropolitan Housing Authority's projects is controlled, in part, by R. C. 3735.44.   A portion of that section provides:

"The planning, zoning, and sanitary laws of the state

and of any political subdivision or agency thereof in which a housing project is located shall apply to housing projects of a metropolitan housing authority to the same extent as if said projects were planned, constructed, owned, or operated by private persons. All powers granted in said laws or in any municipal charter to or over privately owned land, buildings, or structures are hereby granted over and in relation to housing projects or authorities. * * *"

Plaintiffs contend that for more than six months defendants have allowed to exist on premises under their control a dangerous and hazardous nuisance in the form of abandoned and junked automobiles, containing broken glass, exposed jagged metal, and debris-filled and rat-infested interiors. Plaintiffs maintain that these automobiles constitute a health and safety hazard to them and other tenants of the defendant Metropolitan Housing Authority, and to others, and also are an attractive nuisance to children of the tenants and to other children.

The plaintiffs request the court to issue a mandatory injunction against the defendants, ridding all the authority's properties of abandoned and junked automobiles presently thereon and enjoining the defendants in the future from negligently permitting such automobiles to remain on the premises of their Hamilton County projects. Defendants argue that they have removed many abandoned and junked automobiles since the initiation of this law suit and with respect to such automobiles now on their premises, they are doing all they can to have them removed. Defendants further urge that the plaintiffs have no standing and no right to complain in this suit about abandoned and junked automobiles at project sites other than those in which plaintiffs are tenants.

The court disposes of this last argument first and discounts its validity. The tenants who are plaintiffs in this suit do have such standing as to bring to the official attention of this court the situation which exists or has existed in the parking areas of all fifteen Hamilton County projects.

At the time of trial, abandoned and junked automobiles constituting a safety and health hazard to tenants of the defendants, and to other citizens, especially children, were located in parking lots of some of the defendants' projects. I find specifically that there were a total of nineteen abandoned and junked automobiles in the two Findlater Gardens projects and four in the Winton Terrace project.

The abandonment of wrecked or worn-out automobiles has become a national problem and this court takes judicial notice of this. The court also notes from its own observations, without the formality of judicial notice, that seemingly governmental units and authorities are not doing enough to eradicate the problem. Obviously the true evildoer is the irresponsible and deceitful person who dumps his automobile on private or public property, saddling someone else with the duty of disposing of it properly. If littering is a social evil, which most believe it is, the dumping of automobiles is such irregular conduct as to amount to littering on a grand scale. The problem would seem to require legislative action in this community by the council of the city of Cincinnati, establishing the dumping of a wrecked or worn-out automobile on unauthorized property as a crime and providing for a substantial monetary penalty and an appropriate period of confinement in the workhouse or jail.

Evidence produced at the trial indicates that the defendants for some time have been aware of the problem so far as it concerns them. Defendants have made some effort to dispose of motor vehicles abandoned on their properties. It would seem that their efforts almost exclusively have been in the direction of importuning various district commanders of the Cincinnati Police Division to remove them. Defendants' resort to the Cincinnati Police Division comes about as a result of authorization provided for in R. C. 737.311 entitled "Impoundment of motor vehicles; owner may reclaim," and R. C. 737.312, entitled "Junk vehicles; procedure for disposal." To the limits of its manpower and equipment the Cincinnati Police Division has co-oper-

ated with defendants. However, motor vehicles in a worn-out condition have been on defendants' lots for at least six months. One of defendants' witnesses testified that he knows that some abandoned automobiles have been on the lots for at least six months. Witnesses for the plaintiffs testified that abandoned cars had been in the defendants' parking areas for *one year*. The defendant Mayerhoefer and his counsel maintained throughout the trial that everything was being done which could be done and that there was a desire to cooperate with plaintiffs and other interested tenants in an eradication of the problem. The court believes that the defendant director of the local Metropolitan Housing Authority is a conscientious and well-intentioned official. However, concerning the magnitude and duration of the problem so far as these defendants are concerned, this court is obliged to decide that the defendants cannot satisfy their legal responsibility as landlords by relying exclusively upon the assistance which the Cincinnati Police Division can give. It is hoped that the police division will continue to cooperate with and assist the defendants, but where the police division's manpower and equipment limitations make it impossible for it to remove the cars within a reasonable time, then the defendants must find additional resources to remove such automobiles. There would seemingly be available to these defendants junk dealers, automobile graveyards, and like facilities. The defendants may even be required to give consideration to securing a place of storage under their own control. This would seem not an unreasonable alternative when one considers the size of defendants' operation.

The presence of these abandoned and junked automobiles constitutes a nuisance which cannot be countenanced. It would be wrong for any of us in any way associated with this case to tolerate a situation of obvious health and safety forebodings with the possibility if not the likelihood of serious physical injury, or worse, to a child naturally attracted to these abandoned motor vehicles.

The plaintiffs have proven their entitlement to a mandatory injunction by this court ordering the defendants to

remove from the parking areas of all fifteen of their projects abandoned, junked or worn-out automobiles no longer fit for operation as motor vehicles. It is this court's view that a car can be considered abandoned after thirty days without explanation. A motor vehicle which is junk or is unfit for operation can readily be identified by using a reasonable and common sense approach. The absence of a current license plate certainly should be a factor in making any of these determinations.

It is the court's order that the offending vehicles be removed from all the defendants' parking facilities in this county within what the court considers a reasonable period of time, that is, ten (10) days. Removal of the abandoned cars has been delayed long enough.

"* * * An injunction necessary for the protection of a * * * right will not be refused because compliance therewith will involve difficulty not amounting to physical impossibility." 29 Ohio Jurisprudence 2d, Injunctions, Section 25.

The plaintiffs have requested this court to issue a permanent order, operating in the future, directing defendants to keep their lots free of abandoned and junked automobiles. As has been indicated, I am ordering the immediate removal of all abandoned and junked automobiles. However, under all the circumstances present, including the stealth often resorted to by those persons who abandon their motor vehicles and also the magnitude of the defendants' local operation with their many tenants, a prospective order could well be ineffectual and unenforceable by the court.

"Impossibility of performance or enforcement. Under the maxim that equity will not do a vain thing, relief will be denied if it is impracticable to frame or enforce a decree which will cover the situation. Injunctions have been denied on the ground that courts of equity cannot grant anything which a party cannot perform." 29 Ohio Jurisprudence 2d, Injunctions, Section 25, p. 193.

Furthermore, counsel for the defendants has officially represented in open court that he is confident that the defendants will give greater attention to the junked vehicle

problem than has been the case in the past. If they are not more responsive in the future to the day to day solution of the problem, if it endures, plaintiffs are then free to seek more comprehensive injunctive relief.

With the problem of abandoned cars worsening, I would like to see the Ohio General Assembly review existing laws which have application. There seems to be too much red tape, too much technical folderol in order to dispose of an abandoned automobile after some irresponsible person has discarded it on private or public property.

This opinion constitutes the court's findings of fact and conclusions of law.

Injunction granted only as to ridding all the authority's properties of abandoned and junked automobiles presently thereon.